## Murray *versus* Ellis, Trustee.

1. An action to recover purchase money on articles of agreement is in the nature of a bill for specific performance; hence where the title to the land is doubtful, or not marketable, the plaintiff cannot be allowed to recover.

2. Where the legal title to land is outstanding in a naked trustee who may be compelled to convey at any time, the title is not a good and marketable one; and an action on a covenant to convey a good and marketable title cannot be maintained by the vendor, upon his tendering a deed for said land with said legal title thus outstanding.

3. Whether a title to land is a good and marketable one, is for the determination of the court on the papers and other facts submitted to it. The opinion of a witness, however competent to determine whether the title be good and marketable or not, cannot be received in evidence.

4. Where a purchaser of land refuses to take it, pay the cash and give the required securities, he makes himself liable for the whole amount of the purchase money immediately. The verdict, in an action of covenant or debt to recover the purchase money on the articles of agreement, if for the plaintiff, should be an absolute and not a conditional one.

March 30th, 1886. Before MERCUR, C. J., GORDON, PAX-SON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, No. 4, of *Philadelphia county:* Of July Term, 1885, No. 184.

The action was in debt, brought by Charles E. Ellis, acting trustee under the will of Amos Ellis, deceased, against James J. Murray.

The *narr* contained four counts.

First count was on a written agreement under seal dated March 10th, 1884, between plaintiff and defendant for sale by plaintiff to defendant of a lot of ground in the Nineteenth ward of the city of Philadelphia for $21,500, tender of a deed and refusal of defendant to accept or to secure purchase money. Second, third and fourth counts were general. Pleas: *Non est factum; nil debet.*

The following are the facts as they appeared on the trial:

On March 10th, 1884, plaintiff and defendant entered into a written agreement under seal for the sale by plaintiff to the firm of Murray & Gill of a lot of ground on the following terms, viz.:

" For the price or sum of $21,500, clear of all incumbrances and estates whatsoever, in the following manner: The sum of $1,500 or more, at the option of purchasers, upon the execution and delivery of the deeds for said premises, and the balance to be secured upon said premises by a mortgage at the rate of five per cent. per annum, payable half yearly . . . . . said balance so secured by said mortgage to be paid at any

time within five years." . . . . . " The title to said premises, and every part thereof, to be good and marketable, and possession thereof to be given to said purchasers, settlement for same to be made say within one month from date."

Plaintiff proved the contract; that defendant's attorney drew a deed from plaintiff to Michael Gill, Patrick Gill, and defendant; that plaintiff signed the deed and tendered it to defendant on May 23d, 1884; and that plaintiff's testator, Amos Ellis, was in possession at the time of his death, in the year 1882.

Defendant proved that the papers had been sent by plaintiff to William Gorman, a member of the bar, to examine the title and pass upon it for defendant.

Mr. Gorman testified that from the papers delivered to him he discovered:

1. That Thomas Richardson, who appeared in the line of title, by a conveyance from Albert James on March 20th, 1865, died on March 3d, 1865, seventeen days prior to the conveyance.

2. That Stephen S. Price, as executor and trustee under the will of Thomas Richardson, by virtue of a power of sale, executed a deed to Amos Ellis, October 7th, 1867, and that the same Stephen S. Price, in a petition to the Orphans' Court in January, 1882, in the Richardson estate, set forth that the title to this property was imperfect, owing to an agreement between James and Stockton, by which Stockton had one half of the property, and for which half Stockton claimed payment from Richardson's estate.

3. That there was a deed from Stockton to James, dated April 6th, 1859.

4. That Stockton received title from Howell on March 31st, 1859.

5. That a ·judgment was confessed by James to March Term, 1865, on which a levy was made on this property after Richardson's death, which title is held by plaintiff.

6. That on December 10th, 1868, James executed to Amos Ellis a deed of confirmation, reciting that the money that purchased the land belonged to Richardson.

Mr. Gorman advised defendant that the title was not marketable, because:

1. The conveyance to Richardson was after his death; the declaration upon record by Richardson's executor that the title was imperfect by reason of a claim made by Stockton for half interest.

2. Notwithstanding the deed from Stockton to James in 1859, there was full notice to a purchaser that Stockton asserted a claim against the title at a subsequent time.

[Murray *v.* Ellis, Trustee.]

3. The conveyance to Richardson and his heirs after Richardson's death would pass the title to Richardson's heirs, and not under his will.

4. If this conveyance to Richardson passed the title to his heirs, then the judgment and execution against James passed nothing.

5. The declaration of James in the deed of confirmation to Ellis would only be an estoppel as to James, but could not affect Richardson's heirs.

The defendant presented, *inter alia,* the following points :

1. Plaintiff is not entitled to recover for the amount of the mortgage, which under the agreement was not payable for five years.

Answer. Refused.

4. This action is to be governed by the same rules as a bill in equity for specific performance. Therefore, unless the plaintiff's title to the property was free from suspicion, the verdict must be for the defendant.

Answer. Refused.

The court charged the jury, *inter alia,* as follows :

I am unable to see that there has been any sufficient defence shown in this action, which is to recover the purchase money under the contract proved. When the deed was tendered defendant refused to receive it; he repudiated the contract and refused to comply with it. It has been intimated that inasmuch as the contract provided that the purchase was to be for part cash and part in a mortgage, there can be no recovery now for the amount of the mortgage. I do not consider that correct.

[Where the purchaser refuses to take the property and pay the cash and give the securities, he is liable to pay the whole amount of the purchase in cash immediately. It is the same as though he agreed to pay partly in cash and partly in goods. This is common sense as well as law.] I do not see anything tenable in defendant's points, or in the evidence, to warrant a verdict for defendant. . All that the plaintiff was bound to do was to furnish a good marketable title, and that the evidence shows he has done. [The damages are to be measured by the price defendant was to pay.]

I refuse all of defendant's points. Exception for defendant on each point.

May 12th, 1885, the verdict was for the plaintiff for the sum of $22,536.

On June 27th, 1885, the court made the following order, viz.: "It is ordered that judgment be entered on the verdict for the plaintiff, to be released if within thirty days from July 1st, 1885, the defendant shall pay in cash to plaintiff the sum

[Murray *v.* Ellis, Trustee.]

of $1,500, and also in cash interest on the sum of $21,500 from July 1st, 1884, at the rate of five per cent. per annum, and the amount of the taxes and water rent of premises mentioned in the contract for the year 1885, and the costs of this suit, and do and shall execute and deliver to the plaintiff the bond and mortgage provided for in the contract for $20,000 on the premises mentioned in the contract, interest to be payable thereon from the date of the execution thereof, and accept the deed for the premises from the plaintiff. The defendant to be at the expense of the papers, and to tender the deed to the plaintiff for execution within the period aforesaid. The plaintiff to allow to the defendant, on account of cash payments hereinbefore mentioned, whatever has been received by plaintiff from the property in the year 1885."

Judgment was accordingly entered, whereupon the defendant took this writ assigning for error the answer of the court to his points those portions of the general charge included within brackets, and the order of the court changing the verdict and entering judgment thereon.

*E. Cooper Shapley,* for plaintiff in error.—1. If the title to the property was not free from suspicion, the verdict should have been for the defendant.

The law is laid down clearly in numerous cases in Pennsylvania that an action at law to enforce performance of a written contract for the sale of real estate is governed by the same rules as a bill in equity for specific performance : Huber *v.* Burke, 11 S. & R., 238; Dalzell *v.* Crawford, 1 Pars., 45; Colwell *v.* Hamilton, 10 Watts, 416–418; Nicol *v.* Carr, 11 C., 381; Speakman *v.* Forepaugh, 8 Wr., 371; Doebler's Appeal, 14 Sm., 17; Swayne *v.* Lyon, 17 Sm., 436.

2. The title to the property was not free from suspicion.

(*a.*) The conveyance from Albert G. James to Thomas Richardson and his heirs being executed after Richardson's death, was void as to him. Coke Littleton, 2, 3; Plowd., 345; Cro. Car., 22; Perkins, 43, 52; 2 Rol. Abr., 43; Eq. Abr., 312; 1 Ves. Jr., 413, 416; Willes, 557.

(*b.*) But the deed having been executed after the death of Richardson, when there was nothing to prevent a conveyance to the heirs being good, the conveyance vested title in the heirs : Hilliard's American Law, 203; Malone's Real Property Trials, 177; Finley *v.* Humble, 1 Marsh., 293; Bacon, 4, 511; 3 Wash. Real Prop., page 263; Ready *v.* Kearsley, 14 Mich., 225; Hogan *v.* Page, 2 Wash. U. S., 605.

(*e.*) Supposing, for the purpose of argument, that no title vested in the heirs, and that there was an agreement to convey,

between James and Richardson, and that this deed was executed in pursuance of that agreement.

James would hold merely as trustee: 1 Pomeroy's Eq. Juris., section 105.

The sheriff's sale, therefore, conveyed no title to Ellis.

The only course to pursue was for the executor to procure a conveyance from James, or to have a decree that he was trustee for the heirs or devisees: Diehl's Appeal, 9 C., 406.

(*d.*) If any title passed by the deed of March 20th, 1865, the recital in the deed of confirmation by James to Ellis could not affect the former grantee: Penrose *v.* Griffith, 4 Bin., 231; Garwood *v.* Dennis, 4 Bin., 327; Morris *v.* Vanderen, 1 D., 67; Dean *v.* Conolly, 6 Barr, 239.

(*e.*) But in addition to the above, defendant had notice from the record of the Orphans' Court that in 1882 Richardson's executor declared that this title was imperfect by reason of a claim of one Stockton to one half interest in this property.

3. The title was to be satisfactory to Mr. Murray and his conveyancer, but it was not satisfactory to them for the reasons given.

4. The sale having been made for one thousand five hundred dollars ($1500) in cash, and a mortgage for the balance payable in five years, the action of debt was not maintainable for the whole amount until the expiration of the credit on the mortgage: Paul *v.* Dod, 2 Man. Gr. & Scott, 800 (52 E. C. L., 800); Dalzell *v.* Crawford, 1 Pars., 43–44; 1 Chitty Pl., 899; 1 Saunders Pl., 899.

Debt must be for a sum certain, or where covenant is secured by a penalty: 2 Tr. & H. Pr., 20.

Debt cannot be maintained on an agreement to pay by instalments until after default in the last payment: Id., 22.

Covenant is the appropriate remedy: Love *v.* Jones, 4 W., 465.

5. The measure of damages in an action of debt is not the amount of the purchase-money, unless payable in money. In England, and in other states it is held that in an action at law by the vendor on the contract, the measure of damages is the difference between the price to be paid, and the real value at the time the contract was broken: Laird *v.* Pim, 7 Mees. & W., 434; R. R. Co. *v.* Evans, 8 Gray, 25; Porter *v.* Travis, 40 Ind., 556; Sawyer *v.* McIntyre, 17 Vt., 27; Congregation *v.* Church, 10 App. Pr. N. S., 484.

In Pennsylvania the case of Tripp *v.* Bishop, 6 Sm., 424, holds that the measure of damages is the purchase-money. But in that case it was payable in money.

The vendor might have sold the land at any time and held the defendant for damages: Baney *v.* Killmer, 1 Barr, 35.

[Murray *v.* Ellis, Trustee.]

6. A conditional verdict cannot be entered in an action of debt.

As the action is for the recovery of a sum certain, it naturally follows that the verdict can be definitely only for that amount, with damages for its detention.

These damages are usually nominal: 2 Tidd's Pr., 879; and should not cover interest even in an action for purchase-money where the vendor has been in possession: Id., 871–2; Love *v.* Jones, 4 W., 474; 2 Tr. & H. Pr., 22; Huber *v.* Burke, 11 S. & R., 242.

7. The declaration cannot be amended where one has been filed, without an opportunity for demurrer or exception before trial.

Act May 10th, 1871, provides for amendments before trial.

Act March 14th, 1882, provides for cases where no declaration has been filed.

*Samuel Gormley*, (*Bowers* and *Thorn* with him), for defendant in error.—If there be anything well settled in the law, it is that a *bona fide* purchaser, for value, of a legal title to land, without notice of any secret trust, takes it clear of all such trusts: Reed *v.* Dickey, 2 Watts, 459; Bellas *v.* McCarty, 10 Watts, 13; Filby *v.* Miller, 1 Casey, 264; Wightman's Appeal, 5 Casey, 280; Mott *v.* Clark, 9 Barr, 399.

Here Ellis bought the property without any such notice, and all the deeds to him are free from assertion of any such secret interest.

On the motion by the defendant below for a new trial, the court, still further to enable the plaintiff in error to perform his contract, made the just and equitable order modifying the verdict. The plaintiff in error did not see proper to avail himself of the time afforded him by the equitable judgment of the court to perform his contract, and it is believed he never did intend to perform his contract, and consequently raised trivial and worthless objections to the title. That a court may mould a verdict so as to effect the equities of a case is an undoubted rule in Pennsylvania: D'Arras *v.* Keyser, 2 Casey, foot page 254.

In the fourth and fifth divisions of the plaintiff's argument it is asserted that the action of debt was not maintainable until the expiration of the credit on the mortgage, and that the measure of damages is not the amount of the purchase-money. The law on these points, it is submitted, is correctly stated by the learned President Judge who tried the case to be that where the purchaser refuses to take the property and give the securities, he is liable to pay the whole amount of the purchase-money immediately.

[Murray v. Ellis, Trustee.]

Where work is to be paid for, one half in promissory notes at three and six months, if the employer refuses to give the notes, the other party has an immediate right of action, and may recover under the common counts: Brown v. Foster, 51 P. S. R., 165.

Debt lies wherever *indebitatus assumpsit* is maintainable: Barber v. Chester Co., 1 Ches. Co. R., 162.

In the sixth division of the plaintiff's argument it is asserted that a conditional verdict cannot be entered in an action of debt, but it is submitted that the law is that the jury may in an action of debt, by a conditional verdict, produce the same result as chancery would: Frantz v. Brown, 1 P. & W., 257.

Mr. Justice GORDON delivered the opinion of the court, April 19th, 1886.

This was an action of debt brought by Charles E. Ellis, acting trustee of the will of Amos Ellis, deceased, against James J. Murray, to recover purchase money alleged to be due on certain articles of agreement, dated 10th of March, 1884, by which the said Ellis, in consideration of the sum of $21,500, agreed to sell to the firm of Murray & Gill certain real property therein described, free and clear of incumbrances. The vendee agreed to pay, and secure the payment of the sum of money above stated, as follows: "$1,500 or more, at the option of the purchaser, upon the execution and delivery of the deeds for the said premises, and the balance to be secured upon the said premises by a bond and mortgage in the usual form, without state tax, at the rate of five per cent. per annum, payable half yearly, the first payment to be made January 1st, 1885, said balance so secured to be paid at any time within five years." The vendor covenanted, *inter alia*, that the title to the said premises, and every part thereof, should be good and marketable. These articles were signed and sealed by Charles E. Ellis, as executor of Amos Ellis, and by James J. Murray, the defendant. Some time after the execution of the paper above mentioned the plaintiff tendered a deed to the defendant for the property described in said articles, and demanded the money and mortgage as therein stipulated. This deed thus tendered was by Murray submitted to his attorney for examination, who pronounced Ellis's title defective and not marketable, whereupon the defendant refused performance on his part, and, as a consequence, suit was brought to compel payment of the full sum of $21,500.

The issue, then, is upon this single question: Was the title thus tendered marketable—such as a chancellor would compel the defendant to accept? Admitting the validity of the deed

tendered to the defendant, then is there nothing in the rulings of the court which is legally incorrect, and we must refuse to sustain the several assignments of error. The court properly rejected the opinion of William Gorman, Esq., as to the marketable character of the title, for that was a question for the determination of the court on the papers and other facts submitted to it, and the opinion of a witness, however learned, could avail nothing. So the court well held that " where the purchaser refuses to take the property, pay the cash, and give the required securities, he makes himself liable for the whole amount of the purchase money immediately." Also, that, in this case, the damages were to be measured by the price the defendant was to pay. But there was error in attempting to make the verdict conditional. In an action of debt on a covenant, such as we have before us, it is presumed the plaintiff has complied with all the conditions which the contract imposed upon him, and on no other presumption can he recover. He must have tendered a good and sufficient deed before suit brought, otherwise his action fails : Huber *v.* Burke, 11 S. & R., 237. It would follow that, on the presumption that the plaintiff had complied with his covenants, no subsequent conditions could be imposed on him, except to file the deed, so that the defendant might have it on payment of the purchase money. But of this action of the court the defendant cannot be heard to complain, as from it no injury resulted to him. If he chose not to comply with the prescribed conditions, he had but to pay the amount of the verdict and costs and take his deed. We cannot, therefore, entertain his exception to this action of the court. The question then recurs, on the first assignment : Was the title tendered to the defendant marketable?—was it free from suspicion ? In Hertzberg *v.* Irwin, 11 Nor., 48, as in many previous cases, we held that a suit to recover purchase money on articles of agreement is in the nature of a bill for specific performance; hence, where the title to the land is doubtful or not marketable the plaintiff cannot be allowed to recover.

Let us now turn to the title before us. In the outstart we find that the legal estate never was in Amos Ellis, however it might be with the equity. Edward G. James, the common grantor, conveyed to Thomas Richardson, his heirs and assigns, by deed dated March 20th, 1865, but some seventeen days before this time Richardson had deceased, so that the title passed directly to his heirs, and were it not for his will their title would be complete and perfect. When, therefore, Stephen S. Price, executor of Thomas Richardson, on the 7th of October, 1867, conveyed to Amos Ellis, he had nothing on which the conveyance could operate but an equitable estate,

if that, for whether so much vested in him we do not know, since there is nothing in the case to inform us. To be sure, we may so assume, but as against Richardson's heirs our assumption comes to nothing, for even our judgment in this case would not bind them. How is this question to be settled? Only by the acquisition of the legal title from these heirs, for there is no other way to put this matter beyond doubt. But whose business is it to remove this doubt if not his who covenanted to convey to his vendee an undoubted title? Let it be admitted that the equity vested in Richardson during his lifetime. Is the title therefore marketable with the legal estate outstanding? What careful conveyancer would so say? It will not do to tell the man who has money to loan, or who is about to purchase, that this imperfect title is just as good as a perfect one, that the heirs are mere naked trustees, and can be compelled to convey at any time, for the inquiry necessarily arises, how is this fact to be settled if the heirs happen to think otherwise? By a decree of a court of chancery? But a title which depends for its validity on a suit either at law or equity can, we think, scarcely be called unsuspicious and marketable; rather the contrary. Nor can we understand the force and effect of the sheriff's deed to Amos Ellis, or the deed of confirmation to him of December 10th, 1869, from Edward G. James and wife. The one had, so far as we can see, no force, because the judgment on which the sheriff's sale was had was not entered until after the date of his deed to Richardson's heirs. The other is to no purpose, for the reason that when executed the grantor had nothing in the premises which he could convey. These do not help in the least to cure the main defect in the plaintiff's title. The legal estate is still outstanding, and until that is extinguished he cannot put himself in a position to enforce payment from the defendant by the tender of " a good and marketable deed"

The judgment is reversed and a new *venire* ordered.