## DAY v. MOUNTIN.

### (Circuit Court of Appeals, Eighth Circuit.   April 4, 1905.)

### No. 2,119.

1. VENDOR AND PURCHASER—SPECIFIC PERFORMANCE—CONTRACT ENFORCEABLE.
   A contract for the sale of land, made in good faith, may be specifically enforced by the vendor, notwithstanding the fact that he did not have title at the time it was made, where such fact was stated and known to both parties, and he acquired the title before the time for performance arrived.

   [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Specific Performance, §§ 257–277.]

2. SAME—TITLE OF VENDOR.
   A contract for the sale of lands which requires the vendor to furnish an abstract showing clear title calls for title in fee simple, and cannot be specifically enforced by the vendor where the only title shown to a substantial part of the lands is a government entry without final proofs, the legal title remaining in the United States.

Appeal from the Circuit Court of the United States for the District of Minnesota.

The case having been fully argued on both sides, the court below being duly advised in the premises, rendered orally the following decision:

LOCHREN, District Judge.  This is a suit in equity, which was commenced by James B. Day against William Mountin, Jr., to obtain a decree awarding specific performance of a contract entered into on the 21st day of March, 1902, by which Frank Day, of Hartford, Wis., agreed to sell to this defendant and convey the land described in the bill, amounting to about 260 acres, in the county of Blue Earth, in this state, for the sum of $15,000, to be paid as provided for in the contract, part of it by the assumption of a mortgage upon the land, and part of it, amounting to $10,000, by a second mortgage upon the land, and a first mortgage upon some other land owned by Mountin, and a second mortgage on still other land.

The bill alleges that on the 21st day of March, 1902, the complainant, James B. Day, was the owner of this tract of land of 260 acres, which was incumbered by a mortgage for $4,850 to David Mountin, a brother of the defendant; and that Frank Day, who is a brother of the complainant, on the 21st day of March, 1902, at Good Thunder, in the state of Minnesota, entered into a contract with the defendant by which he, Frank Day, sold and agreed to convey to the defendant and his assigns that tract of land, by deed of warranty, for the sum of $15,000, on or before April 21, 1902; defendant to assume a mortgage of $5,000 upon the purchased premises, and for the balance—$10,000—to give a second mortgage on the same, and also a first mortgage on specified land of the defendant, and a second mortgage on the other land.  The mortgages were to bear interest at the rate of 5 per cent., and both parties were to furnish abstracts showing a clear title, the interest to be payable semiannually.  The agreement, which is copied in the bill, goes on to provide that, should default be made in the payment of the several sums of money, either or all or any part thereof, or in the payment of the interest or taxes, or any part thereof, "or in any of the covenants of the agreement to be kept and performed by the party of the second part, then this agreement to be void at the election of said party of the first part, time being of the essence of this agreement.  And in case of default by said party of the second part in whole or in part, in any or either of the covenants of this agreement to be by him kept or performed he hereby agrees upon demand of the said party of the first part quietly and peaceably to surrender to him possession of said premises and every part thereof, it being understood that until such

default said party of the second part is to have possession of said premises." It further agrees that the covenants and agreements, and all of them, shall run to the heirs, executors, administrators, and assigns of the respective parties.

The evidence in the cause shows that at the time of this agreement this tract of 260 acres belonged to the complainant—he had the legal title—and that the defendant, under his brother, who was complainant's grantor, had been in possession of it some 20 years, and was holding under the complainant upon an old agreement that he should pay the taxes levied upon the land; and he was in such possession at the time when this written agreement with Frank Day was entered into.

There is one question that has not been argued at all. It does not appear in the pleadings, but it certainly appears upon the face of the agreement, and especially in the situation of the parties as shown by the evidence, that, at the time this agreement was made, Frank Day had no interest whatever in this land, legal or equitable, and that the defendant did have the possession under a verbal lease from his brother, the former owner of the land—a lease which had run so long that in law it would be regarded as a lease from year to year; and, as this written agreement provides distinctly that if the defendant shall be in default "in any or either of the covenants of this agreement entered into to be performed, he hereby agrees upon demand of said party of the first part quietly and peaceably to surrender to him possession of said premises and every part thereof, it being understood that until such default said party of the second part is to have possession of said premises," that question is this: Whether the parties having by this clause provided for the compensation which Frank Day, the vendor, should receive in case the defendant should make default on his part in the covenants of this agreement; whether the agreement is that the defendant shall either perform his covenants therein as specifically provided, or, as an alternative for nonperformance, shall deliver up this possession of the land which he had at the time, which was of course of some value, and which was something that Frank Day had no interest in; whether it was not an agreement to turn over to him something of value, and whether that was not the particular provision that was made, and the particular thing that he was required to do and obligated himself to do, in case of default in the performance of his agreement to purchase.

But it is not necessary to dispose of the case upon that ground. It appears, and is alleged in the bill, that on the 23d of March, two days after the making of the written contract, these parties came together, the complainant then being with Frank Day and the defendant; and the defendant at that time made an excuse for not performing alleging that his wife was absent, and would be at Mankato on the following day; and that thereafter, on or about the 24th day of March, before there had been any change with respect to the title, while the title was still in the complainant, and while Frank Day was still a stranger to the title, and the complainant a stranger to the contract of sale, the defendant met Frank Day and the complainant in Mankato, "but, instead of carrying out said contract, informed your orator and said Frank Day that he would not purchase said land and would not execute said mortgage, as required by said contract, and would not carry out said contract upon his part either then or in any future time."

Now, while this contract is doubtless a valid one in law between the parties to it, the question that is presented here is whether it is such a contract, under all the circumstances, as a court of equity will specifically enforce. Courts of equity for a long period have enforced specific contracts for the sale of land, in cases that were deemed proper for the exercise of equitable jurisdiction, upon the ground that when the contract was fair and reasonable, and no advantage taken by one party of the other, the damages recoverable by one party from the other in an action at law were not always adequate. It would seem, really, that the reason for invoking equitable jurisdiction to decree specific performance for the sale of land rests upon a stronger basis when invoked by the purchaser than when invoked by the vendor, where the sale is only for money to be paid, as the damages recoverable at law appear to provide adequate and ordinary compensation to the vendor for the breach of the contract, while such damages may be far from an adequate compensation to the pur-

chaser, if he had a special reason for desiring to purchase a particular piece of land, over and above and aside from its marketable value. Equity does not in that class of cases, any more than in any other classes of cases, give relief unless the case made by the complainant is in all respects fair and equitable, and where the remedy, as well as the obligation, is mutual between the parties—where they stand on an equal footing. It was for some time held by courts of equity that a unilateral contract would not be enforced, for this reason: that it was in form a contract only binding upon one party. But it was also held that the other party by accepting such contract, and by performing or accepting performance to any extent, became equally bound; and therefore courts of equity have enforced specific performance of contracts that were unilateral in form. But I think in no case will such decree be made where the remedy was not mutual at the time the contract was made. It is not required, where a vendor seeks specific performance, that he shall show that at the time he made the contract he had the complete legal title in himself. If he had an equitable title, such as would give him the right by a suit at law or otherwise to enforce his right to title against whoever held the legal title, so that he would obtain the legal title, then he had an actual interest in the land and a reasonable hope of obtaining the title he contracted to convey.

Where time is not by the terms of the contract made the essence thereof, he would be allowed a reasonable opportunity to obtain the title and tender performance, and he would not, therefore, be cut off from this equitable remedy. But I know of no case, and I do not think the ingenuity of counsel has been able to find any, at least none have been presented to me, where the bald statement has been agreed to in a court of equity that a person with no right, no interest whatever in the land, legal or equitable, can make a contract to sell that land to another, and then obtain the title from some one else, and secure afterwards the aid of a court of equity to enforce the performance of such contract. And this is true, for the very obvious and sufficient reason that the other party, the vendee, would not have the same remedy against him, he not having the title, and no specific performance could be decreed or enforced against him. It might be optional with him, after the contract was made, whether he obtained the title or not, or it might be that he would be unable to obtain the title. Whether he was able to or not, whether he was willing or not, would make no difference, if he was unable to at the time when he made the contract, and the vendee had to take the risk. The mere fact that he became able afterwards would not give him the right to enforce the contract by the decree of a court of equity.

Now, it appears from the allegations of the bill and from the evidence in this case that, while the title was in the same condition that it was when this contract was made, on the 24th of March, 1902, the parties met together, and that the defendant, as far as he could, repudiated and rescinded the contract, and refused to carry it out then or at any future time. This is alleged in the bill. At that time it appears that Frank Day, the other party to the contract, and the owner of the contract at that time, and a party to the contract still, had no title. He was not in a position to convey the premises to the defendant, although the owner of the title was present and was willing on his part to volunteer to convey. But the defendant had not obligated himself to receive such a title, and he was not bound to do so. The other party could not then carry out the contract according to its terms. I am inclined to think that, under the circumstances, at that time the defendant had the right to rescind the contract and to refuse to be longer bound by it; I mean, as far as any relief from a court of equity is concerned. He did nothing further to lead the other parties on to do anything more towards carrying out the contract, and there are no equities raised against him which would entitle the vendor to a decree for specific performance.

On the whole case, I think the complainant is not entitled to any decree in this cause, notwithstanding the fact that afterwards Frank Day transferred to him this contract, and he tendered conveyance of the land, and also a deed of the land made by Frank Day. So, without considering the question whether the abstract was sufficient or not, I am inclined to think that com-

plainant is not entitled to recover, and a decree may be entered dismissing the bill, with costs.

H. W. Sawyer, for appellant.

H. L. Schmitt and A. E. Clark (J. W. Schmitt, on the brief), for appellee.

Before SANBORN, Circuit Judge, and PHILIPS and RINER, District Judges.

RINER, District Judge. This is a bill in equity brought by appellant (complainant below) to enforce specific performance of a contract to purchase two hundred and sixty (260) acres of land situate in Blue Earth county, Minn.

The contract is in the following words, to wit:

"This agreement, Made and entered into this 21st day of March, A. D. 1902, by and between Frank Day of Hartford, Wis., party of the first part, and William Mountin, Jr., party of the second part, Witnesseth: That the said party of the first part, in consideration of the covenants and agreements of said party of the second part, hereinafter contained, hereby sell and agree to convey unto said party of the second part, or his assigns, by deed of warranty, upon the prompt and full performance of said party of the second part of his part of this agreement, the following described premises situate in the County of Blue Earth and State of Minnesota, to wit: the northwest quarter of the southeast quarter (N. W. ¼ of S. E. ¼) in Section eighteen (18); also the north sixty (60) acres of the southeast quarter of section nineteen (19); also the southwest quarter of section twenty (20) all in township one hundred and six (106) North, Range twenty-seven (27) containing in all two hundred and sixty acres (260) more or less, according to Government survey. And said party of the second part, in consideration of the premises, hereby agrees to pay to said party of the first part, as and for the purchase price of said premises the sum of Fifteen Thousand Dollars in manner and at the times following, to-wit: Fifteen Thousand Dollars on or before April 21st, 1902; Party of the second part is to assume a mortgage of $5,000 on above premises; for the balance $10000—to give a second mortgage on same, also a first mortgage on the northwest quarter of section twenty (20) also the east half of the southeast quarter and the southwest quarter of the southeast quarter of section eighteen all in said township 106, Range 27, also a second mortgage on the north half of the northeast quarter and the northeast quarter of the northwest quarter except the west two acres of the northeast quarter of the northwest quarter of section nineteen, said township 106, Range 27, said mortgage to bear interest at the rate of 5%. Both parties are to furnish a complete abstract showing clear title. Interest payable semi-annually. But should default be made in the payment of said several sums of money or any or either of them, or any part thereof, or in the payment of said interest or taxes, or any part thereof, or in any of the covenants herein to be by said party of the second part kept or performed, then this agreement to be void, at the election of said party of the first part, time being of the essence of this agreement. And in case of default by said party of the second part in whole or in part, in any or either of the covenants of this agreement to be by him kept or performed he hereby agrees upon demand of said party of the first part, quietly and peaceably to surrender to him possession of said premises and every part thereof, it being understood that until such default said party of the second part is to have possession of said premises. All the covenants and agreements herein contained shall run with the land and bind the heirs, executors, administrators and assigns of the respective parties hereto. The within mortgage is to run eight years from date of delivery of deed. It is Mutually Agreed by and between the parties hereto that the time of payment shall be an essential part of this contract; and that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, admin-

istrators, and assigns of the respective parties. In testimony whereof. Both parties have hereunto set their hands and seals the day and year hereinbefore written.                                        Frank Day.  [Seal.]
                                             "William Mountin, Jr.  [Seal.]"

It is alleged in the bill that on the 21st day of March, 1902, complainant was the owner of the land described in the contract; that on the 23d day of March, the complainant and Frank Day called upon the defendant and informed him that complainant was ready to convey the premises to Frank Day, and that Frank Day was ready to convey the same to him, and to furnish an abstract showing a perfect title as soon as the defendant was ready for it; that the defendant made no objection to the contract at the time, and stated that he and his wife would be at Mankato the following day; that on the 24th of March the defendant met the complainant and Frank Day at Mankato, but, instead of carrying out the contract, informed complainant that he would not purchase the land, and would not execute the mortgage, as required by the contract, and would not carry out the contract on his part either then or at any future time; that Frank Day thereupon demanded that the defendant carry out the contract upon his part, and then and there offered and was able and willing to convey the premises to defendant as provided in the contract, but that defendant absolutely refused to do so. It is then alleged that on the 26th of March, 1902, Frank Day and Mammie Day, his wife, by their contract in writing, duly sold and assigned the contract between Frank Day and William Mountin to the complainant, subject to the performance by the complainant of each and all the conditions of the contract to be performed by Frank Day; that on the 28th of March, 1902, the assignment was duly recorded in the office of the register of deeds of Blue Earth county, Minn.; that on the 2d day of April, 1902, the defendant was notified that the contract had been assigned, and a deed of conveyance of the premises described in the contract, together with an abstract, were presented to defendant, ready for delivery to him upon his executing and delivering to complainant the mortgage for $10,000 as provided in the contract; that the complainant at the same time demanded that the mortgage be delivered, and the terms of the contract upon the part of the defendant complied with on or about the 22d day of April, 1902; that thereupon the defendant again positively refused to carry out the contract upon his part, either then or at any future time. It is further alleged that thereafter, and before the commencement of this suit, complainant tendered to defendant a deed conveying the lands described in the contract, containing full covenants of warranty, subject to said mortgage executed by Frank Day and his wife to him, the defendant, and also a separate deed to the lands executed by the complainant and his wife to the defendant, containing full covenants of warranty, subject to the mortgage, together with an abstract of title; that, by reason of his entering into the contract agreeing to purchase the lands, the defendant has been enabled to have, has had, and now has the quiet and peaceable possession of

the land, without any contract or agreement as to terms, except that he would purchase the land.

To this bill the defendant first filed a plea in bar, which was overruled by the court. Thereafter, on the 31st of October, 1902, the defendant filed an answer, in which he admitted that he was in possession of the land, but alleged that he came into possession of it by reason of an oral lease entered into between himself and David Mountin, who was then the owner of the land; that by the terms of the lease, in consideration of his paying the annual taxes and road taxes assessed against the premises, he was to have the use and possession of the land; that, pursuant to this oral lease, he had been in possession of the premises for 20 years; that the lease had never been terminated; and he denied that he ever entered into possession of the premises, or any part thereof, under or by virtue of the contract entered into by and between himself and Frank Day. He admitted the assignment by Frank Day and Mammie Day, his wife, to complainant, but alleged that it was without consideration, and made with intent to hinder, delay, and defraud the creditors of Frank Day. He further admitted that the assignment was recorded in the office of the register of deeds, and that soon thereafter he received notice of the assignment. He further admitted the tender of the deeds by complainant and wife, and Frank Day and wife, as alleged in the bill. He then alleges that Frank Day never owned the premises described in the contract, and that he procured the making of the contract fraudulently and through misrepresentation as to the ownership of the property, and entered into the contract merely as a speculation for the purpose of defrauding the defendant, well knowing at the time that he was and would be unable to procure title to the lands mentioned and described in the contract; that neither Frank Day nor the complainant has ever procured, exhibited and delivered, or caused to be exhibited and delivered, an abstract of title to the premises to defendant, showing clear title to the lands as provided in the terms of the contract; that both the complainant and Frank Day have wholly failed and refused to carry out or perform their part of the terms and conditions of the contract, and never have been, and are not now, willing, ready, or able to perform or carry out their part of the terms and conditions thereof; that in truth and in fact the title to the premises which Frank Day agreed to convey to this defendant by the contract was at the time of the execution of the contract, and ever since has been, and is now, defective and unmarketable, which facts were well known to the complainant and Frank Day. He then alleges that the contract is too indefinite and uncertain to be of any effect.

To this answer the complainant filed a reply, and the case was sent to a master to take and report the evidence.

It is established by the evidence that the defendant entered into the contract, hereinbefore set out, with Frank Day on the day that it bears date; that Frank Day at that time informed the defendant that his brother owned the land; that, on the day the contract was made, James B. Day, a brother of Frank Day, held a deed for the

real estate described in the contract, having purchased it from David Mountin, brother of the defendant; that soon after the execution of the contract Frank Day and James B. Day joined in a telegram to the defendant advising him that they were ready to carry out the contract, and that on the 23d of March, 1902, James B. Day and Frank Day called upon the defendant at his home; that he then agreed to meet them at Mankato on the following day, which he did; that he then and there declined to carry out the contract on his part; that on March 26th Frank Day assigned the contract to complainant; that complainant has tendered to defendant deeds from both Frank Day and from himself; that the defendant at all times refused to perform and carry out the terms of the contract on his part; that complainant did not have perfect title to a portion of the premises described in the contract.

The Circuit Court dismissed the bill on the ground, as we gather from the opinion attached to the record, that there was, at the time the contract was made, no mutuality of remedy. Such mutuality of remedy did arise, however, on March 26, 1902, when the assignment was made to James B. Day, and more than 20 days before April 21, 1902, when the contract was to be performed.

Upon this question of mutuality of remedy at the time a contract is executed, there is some apparent conflict of authority. In some of the text-books statements may be found to the effect that, unless there is mutuality of remedy at the time the contract is made, specific performance will not be decreed. Fry on Specific Performance of Contracts, 214; Bisp. Eq. 437; Eaton, Eq. 548. And it has been so held in several cases. Boucher v. Vanbuskirk, 2 A. K. Marsh, 345; Hutchinson v. McNutt, 1 Ohio, 14; State v. Baum, 6 Ohio, 383; Cabeen v. Gordon, 1 Hill, Eq. (S. C.) 51; Norris v. Fox (C. C.) 46 Fed. 406; Farrer v. Nash, 35 Beav. 167; Bronson v. Cahill, Fed. Cas. No. 1,926.

The reason given for the rule in most of these cases is that such a transaction will not be sanctioned by a court of equity because it is a mere speculation, and one who speculates upon that for which he has no contract, or the means of acquiring it, is not a bona fide contractor. In Eaton's Eq. 548, it is said:

"But if the vendor had no title at the time the contract was executed, equity will not interfere to compel specific performance of the contract, even if the vendor subsequently acquires a title. Such a transaction is speculative, and the vendor is not a bona fide contractor."

Other courts have seemingly adopted the rule that a contract for the sale of real estate which the vendor does not own is enforceable by specific performance whenever, at the time the contract is to be performed, there is a mutuality of remedy. Easton v. Montgomery, 90 Cal. 307, 27 Pac. 280, 25 Am. St. Rep. 123; Burks v. Davies, 85 Cal. 114, 24 Pac. 613, 20 Am. St. Rep. 213; 1 Chitty on Contracts (11th Am. Ed.) 431; Dresel v. Jordan, 104 Mass. 407; Townshend v. Goodfellow, 40 Minn. 312, 41 N. W. 1056, 3 L. R. A. 739, 12 Am. St. Rep. 736; Smith v. Cansler, 83 Ky. 371; Hepburn v. Auld, 9 U. S. 262, 3 L. Ed. 96.

An examination of the cases last cited will show that in many if not all of them the vendor's title was defective only, and that he had some interest in the lands sought to be conveyed, either equitable or otherwise, although he had not a good title at the time the contract was executed. Such was the case in Hepburn v. Auld, where the court held that, if the vendor was able to give a good title at the time of the decree, the contract could be specifically enforced. In Easton v. Montgomery, the court said:

"It is not necessary, however, that the vendor should be the absolute owner of the property at the time he enters into the agreement of sale. An equitable estate in the land or a right to become the owner of the land is as much the subject of sale as is the land itself, and whenever one is so situated with reference to a tract of land that he can acquire the title thereto, either by the voluntary act of the parties holding the title or by proceedings at law or in equity, he is in a position to make a valid agreement for the sale thereof. * * * If the agreement is made by him in good faith, and he has at the time such an interest in the land, or is so situated with reference thereto that he can carry into effect the agreement on his part at the time when he has agreed so to do, it will be upheld."

And in Burks v. Davies, 85 Cal., 24 Pac., 20 Am. St. Rep., it is said:

"If, though he be not the absolute owner, it is in his power by the ordinary course of law or equity to make himself such owner, he will be permitted within a reasonable time to do so."

In Smith v. Cansler, 83 Ky., Holt, J., said:

"Mutuality of obligation is, in general, necessary to the validity of a contract; and it is a general rule that, in order to be binding, it must be enforceable by either party. If, however, one is not invested with such a title as he undertakes by his contract to make to a purchaser, yet if time be not of the essence of it, and he is able to make title when the time for performance arrives, and tenders the deed, then it will be enforced, although his title was defective at the date of the contract; and in such a case, if a rescission be asked by the other party, and the vendor is not able at the time of the institution of a suit for this purpose to comply with the contract, yet, if he can perfect the title within a reasonable time, the court will afford him an opportunity to do so."

While it is practically impossible to lay down any definite rule upon this subject because of the varying circumstances which surround each particular case, yet we can see no just reason why a contract by one to sell and another to purchase a piece of property, when the vendor informs the vendee at the time the contract is made that he intends to purchase but does not then own the title to the property, is not as fair, reasonable, and enforceable a contract as one to sell the property to which the vendor has title. A court of equity compels specific performance of contracts because it is the intention of the parties that they shall be performed. The person who demands performance must, it is true, be in a capacity to do substantially all that he has promised before he can entitle himself to the aid of the court. At what time this capacity must exist, whether it must be at the date of the contract, at the time it is to be executed, or at the time of the decree, depends much upon circumstances, which may vary with every case. There is, per-

haps, no class of cases which more require the exercise of a sound discretion.

There is, however, another question presented by this record which necessitates the affirmance of the decree made by the Circuit Court. The contract in this case provides that both parties are to furnish a complete abstract showing clear title, and that the conveyance from Frank Day to the defendant shall be by deed of warranty. This we construe to mean a fee-simple estate. The record discloses that the title to a portion of the land to be conveyed, to wit, southwest quarter of section twenty (20), township 120, range 27, consisting of one hundred and sixty (160) acres, is defective, in that the legal title thereto has never passed out of the United States. The evidence shows that John A. Willard, through whom the complainant claims to hold title, made an entry upon this land. There is nothing, however, to show the nature of the entry, whether it was made under the homestead, pre-emption, or other land laws of the United States. No receiver's receipt, register's certificate, or patent has ever been recorded. And there is nothing in the record to show that the entry was ever perfected, final proof made, or that the government has ever been divested of the legal title to this tract of land. An entry merely vests the entryman with an interest in the land which may ripen into a legal title upon final proof and the issuance of a patent. Cornelius v. Kessel, 128 U. S. 456, 9 Sup. Ct. 122, 32 L. Ed. 482; Fenn v. Holme, 62 U. S. 481, 16 L. Ed. 198. In the case last cited, which was an action in ejectment, the Supreme Court said:

"The legal title to the land in question remains in the government until it is invested by the government in its grantee. The patent is the superior and conclusive evidence of legal title. That the plaintiff in ejectment must in all cases prove a legal title to the premises in himself at the time of the demise laid in the declaration, and that evidence of an equitable estate will not be sufficient for a recovery, are principles so elementary and so familiar to the profession as to render unnecessary the citation of authority in support of them. The inquiry presents itself as to who holds the legal title to the lands in question. The answer to this question is that the legal title remains in the original owner, the government, until it is invested by the government in its grantee; * * * that Congress has the sole power to declare the dignity and effect of titles emanating from the United States; and the whole legislation of the government in reference to the public lands declares the patent to be the superior and conclusive evidence of legal title. Until it issues, the fee is in the government, which by the patent passes to the grantee, and he is entitled to enforce the possession in ejectment."

As already suggested, the evidence shows an entry or a mere filing on a portion of the land in question. This, we think, was not sufficient to authorize a decree for the specific performance of this contract. Both upon principle and authority, we think it entirely clear that specific performance will not be decreed upon the application of the vendor of real estate, unless his ability to make such a title as he has agreed to make be unquestionable; and a court of equity will not interpose its extraordinary power to compel the specific performance of a contract if the person demanding it cannot, at the date of the decree, himself do all that it is incumbent upon him to do by the terms of the agreement, unless it be a case

where the failure to perform belongs to the category of those in which substantial justice can be done by allowing compensation to the purchaser and decreeing performance with allowances. This, however, is not such a case. Morgan v. Morgan, 2 Wheat. 290, 4 L. Ed. 242; Jeffries v. Jeffries, 117 Mass. 184; Richmond v. Gray, 3 Allen, 25; Hayes v. Harmony Grove Cemetery, 108 Mass. 400.

The decree of the Circuit Court is affirmed.