## SAN MATEO LAND CO. v. ELEM.

(Circuit Court of Appeals, Eighth Circuit. October 29, 1923.)

No. 6272.

1. **Vendor and purchaser** &#8669;339—**When purchaser may rescind without tender of performance.**

Where the abstract furnished by a vendor failed to show a merchantable title, as required by the contract before consummation of the sale, the purchaser may rescind and recover back purchase money paid without tender of the remaining purchase money and demand for a deed.

2. **Vendor and purchaser** &#8669;341(2)—**Complaint in action by purchaser to recover purchase money paid held sufficient.**

In an action at law by a purchaser to recover purchase money paid after his rescission of the contract for failure of the vendor to furnish an abstract showing a merchantable title, as required by the contract, plaintiff is not required to set out in the complaint the specific defects in the title.

3. **Vendor and purchaser** &#8669;130(2)—**An equitable title is not a "merchantable title."**

Under a contract requiring a vendor to furnish an abstract showing a good and merchantable title, a legal and not merely an equitable title must be shown.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Merchantable.]

In Error to the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

---

&#8669;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action at law by J. H. Elem against the San Mateo Land Company. Judgment for plaintiff, and defendant brings error. Affirmed.

E. R. Wright, of Santa Fe, N. M. (A. B. McMillen, of Albuquerque, N. M., on the brief), for plaintiff in error.

Glenn Porter, of Wichita, Kan. (S. B. Amidon, S. A. Buckland, and H. W. Hart, all of Wichita, Kan., and George S. Klock, of Albuquerque, N. M., on the brief), for defendant in error.

Before STONE, Circuit Judge, and VAN VALKENBURGH and KENNEDY, District Judges.

KENNEDY, District Judge. The defendant in error, plaintiff in the court below, sued the plaintiff in error, there defendant, to recover the sum of $5,000 paid by the plaintiff as a part of the purchase price of certain lands. The proposed purchase and sale of these lands was evidenced by a written contract between plaintiff and defendant. The real estate so agreed to be conveyed was situate in the county of Sandoval, state of New Mexico, and was set out in the contract by general lines of boundary, the southern boundary line of which was coincident with the northern boundary line of another tract of land, also under contract for purchase and sale between the same parties. There is expressly excepted from the described tract, certain strips of land owned by individuals, and it was stipulated that the land to be conveyed contains not less than 20,000 acres.

The vendor under the terms of the contract agreed to furnish the purchaser with a plat of the survey and an abstract of title to the land. The purchaser further agreed to pay for the land at the rate of $2 per acre, the total amount of the purchase price to be determined by a survey, of which said purchase price the sum of $5,000 was paid in cash, the recovery of which sum is the basis of the suit, and the balance of the purchase price was to be paid upon delivery of good and sufficient deed within 60 days from the date of the execution of the instrument. The contract bears date of December 27, 1919, but the record shows that it was not fully executed until about the middle of January, 1920, when the defendant land company transferred to the plaintiff a duplicate signed copy and acknowledged receipt of the $5,000 paid upon the contract by the plaintiff, Elem.

There then was some correspondence in regard to the completion and submission by the defendant of an abstract of title in which it appears that, irrespective of the time stated in the contract for the consummation of the sale, the plaintiff was given 30 days after the abstract had been furnished by the defendant, in which to secure a legal opinion upon the title. Some difficulty was evidently experienced by the defendant in completing the abstract as soon as expected, as it was not forwarded to the plaintiff until March 9, 1920. There is no controversy, however, in this suit as to the matter of time being of the essence of the contract. The abstract furnished by the defendant appears to be over the certificate of A. B. McMillen, who denominates himself "abstractor," he being at the time the president of the San Mateo Land Company, which was the defendant in the suit. On April 8th the plaintiff, through his attorneys, transmitted to the defendant the

opinion of plaintiff's attorneys upon the abstract, wherein objection was made to the sufficiency of the abstract in not showing good and merchantable title to the lands covered by the contract, in the defendant company.

One of the objections made to the abstract was that a certain suit brought in the state court, known as No. 616, for the purpose of quieting title to the lands in controversy in the defendant company, had been filed after the abstract had been completed and was not shown upon the abstract, and that this suit had for its purpose the determination of certain tracts of land within the tract agreed to be conveyed, and that without the determination ultimately of the acreage contained in these tracts it was impossible to determine whether or not the defendant was in a position to convey the required acreage covered by the contract. Another objection made was that, in the same suit in the state court, it appeared that there were taxes against said property covered by the contract which were a cloud upon the title, and which could not be determined until the court had made an order in the premises. Other objections included the failure of the abstract to show the incorporation of the defendant company, and that a number of conveyances through which that company purports to have title were supported by affidavits, which could not be held to have the force and effect of judicial determination. Objection is also made that the abstract was not certified to by an abstract company.

On April 14, 1920, the defendant company through its attorney, made reply to the letters containing the objections on behalf of the plaintiff, in which the position is taken that the suit filed to quiet title has nothing to do with the title as shown by the abstract furnished; that the objection on account of the abstract not showing a sufficient acreage is not true in fact, and this the attorney for the defendant company signified his willingness to establish to the satisfaction of any court. In regard to taxes, the writer of this letter states that he felt the most satisfactory way of settling the taxes was in the manner suggested by him, which probably refers to a statement in the abstract itself, which is in the following language:

"There are but little taxes against this property, but, owing to the fact of there being so many strips held by and taxed to individuals, it will be necessary to get an order of court to clear up the questions of taxes, and this will be attended to at once."

The writer of the letter, in answering the objections of the plaintiff to the title, then states:

"However, I have written the treasurer of Sandoval county to make me a certificate showing all the taxes of every kind and nature against this land, and the same will be fully paid at or before the time of completing the sale."

In regard to the suit in the state court for the purpose of determining the small strips of land within the tract agreed to be conveyed, the attorney for the defendant company states as follows:

"The object of the suit to which you refer was to locate definitely the few small tracts of land that we did not purchase, so that there could be no question about their location, and thus definitely segregate them from the lands that are owned by the San Mateo Land Company."

The writer further adds:

"As stated in the beginning, I stand ready to establish by the judgment of any court that the San Mateo Land Company is the owner in fee simple of not less than 50,000 acres of land which Mr. Elem contracted to purchase."

At this point it may be well to state that there were two separate contracts for the purchase and sale of lands between the same parties, which has heretofore been adverted to, one of which covered an area of 30,000 acres lying immediately south of the area covered by the contract in controversy, which latter area was supposed to contain 20,-000 acres. The former contract is only material in this case as it reflects light upon the acreage which was to be conveyed under the contract in the suit at bar.

On April 21, 1920, the attorneys for Elem, the plaintiff, notified the defendant by letter that he could not accept the abstract of title to the land and demanded the return of his money. Thereafter, and on April 23d, the defendant company, through its attorney, notified the plaintiff that it was considered by defendant company, that the plaintiff was bound under the contract to take the property, and, in the event he did not, the property would be sold elsewhere, and, if the price of such sale should fall below the contract price under the contract between plaintiff and defendant, that the plaintiff would be looked to, to make good any such deficiency. No further transactions material to the issues in the case took place between plaintiff and defendant, and on the 8th day of March, 1921, the plaintiff, Elem, began suit for the recovery of the $5,000 paid upon the contract, as hereinbefore stated. The cause was tried to the court with a jury, and, both parties having requested an instructed verdict, the trial court instructed the jury to find a verdict in favor of the plaintiff, which was done, and a judgment rendered upon said verdict accordingly. Exceptions were taken by defendant, and the cause brought here on writ of error.

Voluminous assignments of error were filed by defendant, which, however, in its brief are condensed into five points, upon which the defendant, as plaintiff in error here, relies for a reversal of the judgment of the trial court.

[1] The first point suggested by the defendant is that the complaint in the court below failed to state a cause of action. The gist of the argument in this particular is that the contract by its terms provides stipulations which are mutual and interdependent, that the deed and abstract were to be delivered at the same time that the remainder of the purchase price was to be paid, and that Elem was therefore not in a position to declare a rescission of the contract until he himself had performed or offered to perform the covenants devolving upon him, which in this instance are contended to be the tender of the balance of the purchase price and a deed of the property to be executed by the vendor. For the reason, therefore, that the complaint does not state that the plaintiff, Elem, did so tender the remainder of the purchase price and a deed for signature, it is contended that the complaint was in this respect insufficient.

This contention is met by the plaintiff, Elem, with the counter contention that, where the vendor is unable to perform at the time agreed

upon, the tender of performance is a vain act, and is not required of the purchaser in order to enable him to rescind, and further that the furnishing of an abstract by the defendant to the plaintiff was a condition, which preceded the mutual covenants above referred to, and that, when the defendant had failed to furnish an abstract showing a merchantable title, the plaintiff was thereby relieved of any tender of purchase price or deed.

We are in accord with the views of counsel for the plaintiff in these contentions. The complaint specifically alleges that the defendant had "wholly failed and refused to furnish plaintiff with a plat and survey of said lands, and with an abstract showing title in said defendant and showing good and merchantable title in said defendant." Under the terms of the contract this the defendant was bound to do, and in the nature of things this must be done before the contract of purchase and sale could be consummated. The allegation, therefore, in the complaint, that the defendant had failed in this particular, relieved the plaintiff of the necessity of making a tender of the purchase price and the demand for a deed, although it specifically appears in the complaint that the plaintiff alleges himself to have been at all times ready, willing, and able to complete the terms of the contract.

The plaintiff in error has relied upon the rule laid down in Cyc., in substance that in order to enable a purchaser to rescind he must have performed or tendered performance of preceding covenants on his part and tendered performance of concurrent covenants. This is followed by a statement of what is denominated as "exceptions to rule," and here it is stated in 39 Cyc. at page 1422, in the following language:

"A well-established exception to the rule stated in the preceding section is that, if the vendor is unable to perform at the time agreed upon, tender of performance by the purchaser is a vain act, and is not required in order to enable him to rescind. Under these circumstances he is not bound to pay or tender payment of unpaid purchase money, or give security for the unpaid purchase money, or tender a deed to the vendor for execution. Such default on the part of the vendor as fully and effectually relieves the purchaser of the performance or tender of performance as the use of express words, or any other means within the vendor's power."

Under this rule, therefore, if the defendant had not furnished the plaintiff with an abstract showing good and merchantable title in itself, or was not able to furnish plaintiff with a good title to said premises, the plaintiff should be and was thereby relieved from any requirement of tender of performance on his part.

The second point raised by plaintiff in error is that the defendant in error upon the trial failed to prove either tender or offer to perform on his part. In view of what has been said with respect to the pleading, it would naturally follow that, in the event a case were established by the plaintiff based upon the failure of the defendant with respect to furnishing an abstract, no such proof of tender or offer to perform was required on the part of plaintiff.

[2] The third point of contention by the plaintiff in error is that the complaint failed to point out any specific defects in the title, which contention likewise cannot be sustained. In suits in equity it has

been held that specific defects in title relied upon must be specifically pointed out. This is particularly true in regard to cases resting upon alleged fraud, but that rule would not seem to apply to the case at bar. The action was at law, and was specifically based upon the failure to furnish an abstract showing good and merchantable title, and was therefore sufficient to tender the issue to the defendant. The defendant was at all times at liberty to seek a more definite and certain statement of defects in the title, had it so desired.

Again, the plaintiff in error urges that the defendant in error should have been limited upon the trial in his proofs to the defects in the title theretofore pointed out. These alleged defects have heretofore been referred to as taken from the letters written by counsel for plaintiff, and an examination of the record leads us to the conclusion that the proofs upon the trial concerned either directly or indirectly such defects.

[3] This leads us to a consideration of the final contention of the plaintiff in error, that the abstract did show a legal title in the defendant company, and this would seem to rest for decision upon the facts as they appear from the record. It was the duty, however, of the defendant to furnish plaintiff with a legal title and not merely an equitable one, in order to make good its implied covenant to furnish a good and merchantable title. The Circuit Court of Appeals of the Seventh Circuit, in the case of Alpha Portland Cement Co. v. Shirk, 227 Fed. 966, at page 972, 142 C. C. A. 424, at page 430, lays down the rule in the following language:

"The contention of appellee that a good and merchantable title is established, when an equitable title is tendered is without merit in the present case. The contract calls for a legal title, not one which could be made such by a lawsuit. An equitable title is not a merchantable title. Maupin on Marketable Titles to Real Estate (2d Ed.) page 781; Sugden on Vendors (14th Am. Ed.) vol. 1, p. 579; Murray v. Ellis, 112 Pa. 485, 3 Atl. 845; Day v. Mountin, 137 Fed. 756, 764, 70 C. C. A. 190."

See, also, Ankeny v. Clark, 148 U. S. 345, 13 Sup. Ct. 617, 37 L. Ed. 475.

Viewing the evidence in the light of such a requirement of title to the premises in controversy, we must conclude that the judgment of the trial court was correct. The property covered by the contract was clouded by taxes, and however much credit may be given to the defendant in a manifestation of good faith to correct this defect by the letter of its attorney, the facts are that a suit had been filed and was at the time pending on behalf of defendant, to remove the cloud from the premises on account of these taxes, and further to determine the location and area of certain strips owned by certain parties within the tract agreed to be conveyed, which makes it clearly evident that, had the plaintiff elected to proceed with the contract, he would have been purchasing a lawsuit involving the title to the lands he contracted to purchase, which he was in no respect required to do. These tracts were specifically referred to in the objections of plaintiff to the abstract. With such a suit pending, having for its very purpose the correction of defects, and with no assurance on the part of the defendant as to when

the matters involved in said suit would be judicially determined, it cannot be presumed that such determination would be within a reasonable time, or within such a time as it would be reasonably fair to require the plaintiff to await the clearing of such title before electing to rescind the contract. As a matter of fact, the record discloses that the final judgment upon this title in the state court was not rendered until January, 1921.

The plaintiff in error contends that the strips of land belonging to third parties were eventually located by a decree of the state court in the tract south of the tract in controversy and did not extend into or affect the title to the latter tract. This, however, was not determined until a trial was had of the action in the state court some time afterwards, and by the petition filed by the San Mateo Land Company in that case it appeared that they did affect the land in controversy. It further appears from the evidence that it was sufficient for a finding of fact in the trial of the case in the court below that, with these strips located all in a tract south of the one in controversy, there would be insufficient land remaining in the tract north, agreed by the contract in this case to be conveyed, to amount to the 20,000 acres, and therefore in this respect the defendant company would not have been able, in the event the title had otherwise proven to be good, to carry out its covenant with respect to the quantity of acreage.

It can scarcely in good faith be contended by the plaintiff in error that the defendant in error was bound by the title shown by the abstract furnished, in view of the fact that within ten days after certifying to the abstract, which certificate was by the president of the defendant company, a suit was filed in the state court which affirmatively set out the defects in the title from defendant's own viewpoint, and which suit was discovered by plaintiff in checking up the title in the abstract furnished. The plaintiff was no more bound to accept a defective title than he was to accept an incomplete and insufficient abstract.

It must therefore follow that the judgment of the trial court should be affirmed; and it is so ordered.