# WHEELING

## COLE *v.* SMITH.

Submitted January 16, 1884—Decided May 31, 1884.

Where a lease is sold with certain personal property thereon for a gross sum for both, and in the writing transferring the lease and the personal property a lien is reserved for the payment of the purchase-money, as between the parties to the contract of sale and those having actual notice of it the lien will in a court of equity be declared to be valid and will be enforced by a sale of both real and personal property for the purchase-money of both. (p. 293.)

The facts of the case are stated in the opinion of the Court.

*Malcom Jackson* and *Thomas L. Brown* for appellants.

*C. E. Doddridge* and *W. F. Mollihan* for appellees.

JOHNSON, PRESIDENT:

In March, 1876, the plaintiffs filed their bill in the county

court of Kanawha county against Brewer Smith and Ka-
nawha Semi-Cannel Coal Company, in which it was alleged,
that Hansford and others had executed a lease to them for *fif-
teen years* for certain coal-property situated in said county, the
lease being exhibited with the bill; that the said parties
plaintiff sold, assigned and set over to Brewer Smith the
said lease and certain improvements by them made thereon
and all their personal property thereon for four thousand six
hundred dollars, and for the further consideration, that the'
said Brewer Smith should pay off and discharge certain debts
due by the plaintiffs to certain parties for work &c. done for
them on said leased premises, and reserved a vendor's lien
for the payment of the purchase-money and the payment of
said debts. The bill further alleges, that said Smith with
others became an incorporated company according to the
laws of West Virginia under the name of the "Kanawha
Semi-Cannel Coal Company," to which company he trans-
ferred said lease and sold said personal property; that the
said company assumed and undertook to perform the
requirements of said transfer and sale and actually paid the
debts so required to be paid but refused to pay the said pur-
chase-money; and that the plaintiffs had obtained judgment
on one of the notes executed by Brewer Smith for the pur-
chase-money, which was wholly unpaid. The prayer of the
bill is, "that the vendor's lien on the said leased premises
and property thereon may be enforced to satisfy the pay-
ment of the notes of the said Brewer Smith now due and
unpaid, and that the said lease and the property thereon may
be sold to satisfy the judgment aforesaid, &c.," and for general
relief.

The lease as well as the said assignment thereof were both
promptly recorded. Upon petition, the lessees in the origi-
nal lease were made parties defendant to the suit and
demurred to the bill for want of equity. As there is no pro-
vision in said lease, that it should not be assigned nor the
premises sub-let without the consent of the lessors, it does
not appear in the record, why said lessors were made defend-
ants to the bill; no error to the making of the lessors defend-
ants is assigned. Brewer Smith and the Semi-Cannel Coal
Company also demurred to the bill.

On July 14, 1876, the county court sustained the demurrer and dismissed the bill with costs. The plaintiffs appealed from this decree to the circuit court of Kanawha county; and on June 13, 1882, upon a hearing of said appeal the said circuit court affirmed the decree of the county court.

From this decree the plaintiffs, W. and T. Cole, appealed to this Court.

The question here presented is: Where a lease is sold and transferred, and in the same transfer or conveyance personal property on the lease is sold, and a vendor's lien is reserved on the face of the assignment for the payment of the purchase-money, as between the parties and those having notice thereof, is the vendor's lien valid, and can it be enforced in a court of equity? The agreement, as it is called, made between the plaintiffs and the defendant, Brewer Smith, first "*assigned, transferred and set over*" the lease, describing it. Then this clause follows: "And the said parties of the first part further grant, bargain, sell and convey to said party of the second part all the improvements they have put upon the property aforesaid, and all the *personal property* they own in and upon or about said property, and which they have procured for the purposes of operating the same under the lease aforesaid; in consideration of all of which, the said party of the second part agrees to pay the said parties of the first part the actual cost of said improvements and *personal property* amounting to four thousand six hundred dollars, * * and the said party of the second part also assumes and agrees to pay in addition to the sum above named certain debts and liabilities incurred by said parties of the first part in making the improvments and purchasing the personal property aforesaid, set out and specified in the schedule hereto annexed, amounting in the aggregate to $——; and the said parties of the first part agree to give immediate possession of the premises to the said party of the second part, and the said party of the second part hereby assumes all the liabilities and obligations of the lessees to the lessors in the lease aforesaid; *and the said parties of the first part hereby retain a lien upon the lease, property, &c., herein sold and transferred, to secure the payment of the purchase-money aforesaid,* and the debts and liabilities assumed as aforesaid."

We need not consider whether a vendor's lien could have been retained for the payment of "the debts and liabilities" to third parties, as the bill alleges, that they have been paid by the defendant, the Kanawha Semi-Cannel Coal Company. There is no implied equitable lien in favor of a vendor of *personal* property for the purchase-money thereof. (*James* v. *Bird's Adm'r* 8 Leigh 510; *McCandlish* v. *Keene et als.* 13 Gratt. *per* Lee J. 629. *Beam* v. *Blanten*, 3 Ired. Eq. 59; *Lupin* v. *Marie*, 6 Wend. 77.) The statute makes no provision for reserving a vendor's lien in the sale of personal property alone. By the chancery practice implied equitable liens existed for the purchase-money of the sale of a leasehold estate as well as for a freehold, and they are still good, if reserved on the face of the deed by which they are conveyed. (Code, chapter 75, section 1, page 475). In *Winter* v. *Lord Anson*, 3 Russ. 488, it was insisted by counsel, that a great part of the property involved in that cause was copyhold, and that the doctrine of lien did not extend to copyhold; but Lord Chancellor Lyndhurst said, that for this position no authority was cited, "and it does not appear to me to rest on any principle. When the purchase-money is not paid, the vendor is considered in this court as having a lien for his purchase-money; what difference can it make as to the principle on which that doctrine proceeds, whether the property be copyhold or freehold, whether it pass by lease and release or by surrender? In questions analogous to this copyholds and freeholds have been considered in many respects as on the same footing. It has been held for instance, *ex parte Warner*, 19 Ves. 202, 9 Rose 206, that the deposit of the court rolls is sufficient to give a lien on the copyhold estate. There is no substance in the alleged distinction."

Here the lease, the interest in the real estate and the mere personal property were sold together for a gross sum; and it is impossible to distinguish the purchase-money of the one from that of the other. In *McCandlish* v. *Keene*, 13 Gratt. 629, Judge Lee said: "I am aware of no case, in which such a lien has been declared on a sale of both real and personal property for a gross sum. * * * The great inconvenience and embarrassment that would follow, if a

lien should exist in this cause, tend strongly to show it could not have been intended. If a lien upon anything, it would be a lien upon all the property sold, thus disabling the vendor from disposing of a slave or any other article, except subject to this doubtful uncertain contingent lien in favor of Mr. Bird." Judge Lee had evidently overlooked the decision in *Clarke* v. *Curtis*, 11 Leigh 559. In that cause it appeared that there was an agreement to sell to three joint purchasers land and certain personal chattels upon it for a sum in gross "*to be paid when the vendor shall have made a deed of the land and a bill of sale of the personal effects,*" and that the purchase-money should be paid in equal instalments at future days appointed; the vendor without making such conveyance delivered the possession of both the real and personal subjects to the vendors. About the time the first instalment fell due, two of the joint purchasers by agreement with the other and with the vendor were discharged from the contract; and by new agreement between the vendor and the third purchaser he became sole purchaser for the same price with no variance, except that the vendor gave further indulgence for the first instalment; and then the vendor agreed to make conveyances of the property to the sole purchaser whenever he should make such payments as they should agree upon; two months further indulgence was given for the payment of the first instalment, and the purchaser continued in possession of both the real and personal property, but the vendor made no conveyance. The suit was brought by the vendor for a specific execution of the contract, by compelling the payment of the purchase-money. It was held by four out of the five judges, that a bill in equity was proper for the vendor against the vendee, for specific execution of the whole contract in respect as well of the personal as of the real part of the subject sold; that as between vendor and vendee the agreement in respect to the sale of the *personal* subject was not executed by delivery of possession thereof to the vendee, but yet remained executory; and the vendor retained a lien on the *personal* as well as the *real* property for the purchase-money of the whole; that a court could properly decree a sale of the whole property, real and personal, for payment of the purchase-money, unless the purchaser within a reasonable time should

pay it; and that in such a case it was erroneous to order a sale of the personal property, *on motion* before the hearing.

The court by Tucker, President, said: "It is objected, that no specific execution of a sale of personal property can be enforced;.and that no lien on the personal property for the purchase-money exists, especially when money has been paid by the purchaser, the possession delivered to him and he is solvent. As to the first, the contract being for the sale of the real estate alone, and as there is clearly jurisdiction as to that it must carry with it jurisdiction as to the personalty also." He further said: "Under the second contract the retention of the title is plain. Curtis agreed to execute a deed for the property to Clarke whenever 'he should make the payments they should agree on.' He was not then to have the property till he paid the money. A lien therefore clearly existed." Brooke, Cabell and Allen J. J. concurred. Judge Stanard dissented as to the opinion, that any lien existed on the *personal property*. He said in his dissenting opinion, page 581: "The opinion I have expressed places the right of the vendor to relief in equity on a foundation, of which his retention of a lien on the personal property for the purchase-money forms no part. I am strongly inclined to think no such lien remained; that the delivering of the personal property and the execution of the bonds by the purchaser under the first contract passed the full property, in that part of the subject to them, without any further act, and no lien upon it for the purchase-money existed after the title in, and possession of it had passed to the purchaser. The new contract made no change in this respect. It only converted the joint-title in, and possession of the personalty before held by Clarke in common with the other original joint-purchasers, into the sole title and possession of Clarke, and the joint responsibility of the original joint-purchasers into a sole responsibility of him alone. But upon this point my brethren hold a different opinion, and I readily acquiesce."

The foundation on which Judge Stanard declared, that the relief in equity in that cause existed was, that there was no adequate relief at law. He said: "Had the purchaser brought his suit for specific performance, there could not have been a

doubt of the jurisdiction, for he certainly had not an adequate remedy at law. It is true he had possession of the personalty, but on that no separate value had been fixed by the parties. They probably made very different estimates of the value of it; and the consequence would be, if he were driven to a suit at law for damages for the failure of the vendor to convey, that he would be exposed to a claim for the estimated profits of the land, which he had received and held as his own, and in effect be made chargeable with an estimated value of the personal property, which might be equally at variance with the estimates of both contracting parties. Now no principle is better settled than that the right to call for the specific execution of a contract is reciprocal."

As the authorities on this question are few, and judges Lee and Stanard, both having in a case like this thought that there could be no vendor's lien as to personal property, we shall be careful not to go farther than authorized by the case in 11 Leigh 559. It seems to us, that where a lease is sold with all the personal property thereon for a gross sum for both, and in the writing transferring the lease and the personal property a lien is reserved for the payment of the purchase-money, and a suit is brought by the vendor to subject the property to sale for the payment thereof, as between the parties to the contract of sale and those having actual notice of it the lien will in a court of equity be declared to be valid and will be enforced by a sale of both real and personal property for the purchase-money of both. There certainly can be no harm resulting to the public from a sale of this kind, as the rights of creditors and innocent purchasers do not intervene. We are not disposed in this case to consider whether or not the writing could be regarded as to the lease and the mere personal property as an equitable mortgage, and whether or not it might under section 5 of chapter 74 of the Code be regarded as duly recorded and as giving notice thereof to anybody. That question does not arise here and will not be considered. The bill shows on its face, and the demurrer admits that the Kanawha Semi-Cannel Coal Company had actual notice of the writing and of the lien retained thereon, and undertook to carry out its provisions.

The decree of the circuit court affirming the decree of the county court is reversed with costs to the appellants; and this Court proceeding to render such decree as the circuit court should have rendered, the decree of the county court is reversed with costs to the appellants in that court; and this case is remanded to the circuit court of Kanawha county for answer to be filed to said bill and for further proceedings to be had in said cause.

REVERSED.  REMANDED.