GERSTELL et al. v. SHIRK.

(Circuit Court of Appeals, Seventh Circuit. October 7, 1913.)

No. 1963.

1. VENDOR AND PURCHASER (§ 337*)—REMEDIES OF PURCHASER—LIEN.

Where a vendee is entitled to a lien on real estate for the amount of an advance payment on failure of the vendor to complete the sale in accordance with the contract, it is not defeated by the fact that he might collect the amount at law, or that the vendor has not a marketable title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 985–990; Dec. Dig. § 337.*]

2. VENDOR AND PURCHASER (§ 67*) — CONTRACT — CONSTRUCTION — APPURTENANCES.

As between vendor and purchaser, the determining element in the constructive annexation to the realty of articles not physically annexed is the intention of the parties, and where a contract for the sale of cement works included the land containing the stone deposits and all machinery, tools, empty bags, stock on hand, etc., and provided that the personal property should be conveyed by bill of sale, it was evidently not the intention of the parties that it should be considered as constructively annexed to the realty, and the contract must be construed as covering both real and personal property.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 100; Dec. Dig. § 67.*]

3. VENDOR AND PURCHASER (§ 337*)—REMEDIES OF PURCHASER—LIEN FOR PURCHASE MONEY PAID.

A purchaser of both real and personal property, included in a single contract, for a gross sum, where the contract is not executed because of default of the vendor, may enforce an equitable lien against the land for earnest money paid, where such lien is recognized by the law of the state, if it is clearly shown, either by the contract itself, or by evidence aliunde that the payment made was much less than any honest valuation which could have been placed on the land when the contract was made.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 985–990; Dec. Dig. § 337.*]

4. EVIDENCE (§ 419*)—PAROL TESTIMONY AFFECTING WRITING—EXPLANATION OF CONSIDERATION.

Where a contract for the sale of both real and personal property states the gross consideration only, extrinsic evidence to show that the parties in fact placed separate valuations on the real and personal property is not inadmissible as contradictory of the contract, but is only explanatory of the consideration stated therein.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1912–1928; Dec. Dig. § 419.*]

5. VENDOR AND PURCHASER (§ 337*)—REMEDIES OF PURCHASER—LIEN FOR PURCHASE MONEY PAID AND EXPENSES INCURRED.

Where a contract for the sale of mineral land expressly provided that the purchaser should have the right to test the land by borings, and that in case of default by the vendor he should pay the reasonable expense of the tests, such expense may properly be added to earnest money paid in a suit by the purchaser to enforce an equitable lien therefor.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 985–990; Dec. Dig. § 337.*]

Appeal from the District Court of the United States for the District of Indiana; Albert B. Anderson, Judge.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Suit in equity by Arnold F. Gerstell and the Alpha Portland Cement Company against Elbert Walker Shirk. Decree for defendant, and complainants appeal. Reversed.

In December, 1911, appellants entered into a written contract for the purchase of certain property from appellee. In outline the contract was this:

In consideration of $450,000, of which $25,000 was paid when the contract was signed and the balance to be due on delivery of the property and sufficient conveyances, appellee agreed to sell and convey to appellants property described as follows:

(1) 312 acres of limestone land in Lawrence county, Ind., with quarry, mill, office, store buildings, tenement houses, and other structures thereon.

(2) 30 acres of shale land in Jackson County, Indiana.

(3) All the personal property, including all machinery, boilers, stock on hand, engines, turbines, generators, motors, electrical machinery, tools, fixtures, appliances, empty bags, machine shop, and carpenter shop, now on said tracts of land.

(4) All of appellee's unfilled contracts for the sale of Portland cement.

Land to be conveyed in fee simple clear of all claims. Appellee to furnish abstract showing good and merchantable title. Personalty to be conveyed by bill of sale.

Unless the shale land shall contain a deposit suitable for cement making and sufficient to supply a 2,000 barrels per day mill for 50 years, and unless the limestone deposit shall average at least 90 per cent. carbonate of lime and be free from strata of dolomite exceeding an average thickness of 3 feet, appellants may decline to take the property bargained for, and appellee shall thereupon return the $25,000. Character and extent of limestone to be determined by drilling. Appellants to have the right to enter for that purpose.

If defects in title are found, appellee is to have 60 days in which to cure them. If not cured, appellants may elect to take the title as it is, or require appellee to repay the $25,000 and all reasonable expenses incurred in testing the property and examining the title.

Appellants filed their bill to enforce a vendee's lien as security for the repayment of the $25,000 and expenses. They set forth the contract, and alleged that the $25,000 was paid to appellee on account of the purchase price of the land; that there were no unfilled orders for cement when the contract of purchase was made, or afterwards; that all the property described in paragraph 3 had theretofore been used and was contemplated by the parties to be used by the purchaser and owner of the plant, when title should be acquired, in the operation thereof as a manufactory of Portland cement, and as incidental and appurtenant to the quarry; that appellee did not furnish an abstract showing good and merchantable title; that appellee's title is in fact unmerchantable by reason of various defects (specifically set forth); that the limestone deposit is not of the character and extent called for in the contract; that the strata of dolomite greatly exceed 3 feet in average thickness, average in fact over 30 feet, and make the quarry worthless for the purposes of cement manufacture; and that they demanded the return of the $25,000 and payment of expenses, and appellee refused.

A demurrer to this bill was sustained, and the appeal is from the decree of dismissal for want of equity.

Addison C. Harris, of Indianapolis, Ind., and Louis H. Porter, of New York City, for appellants.

Ferdinand Winter, of Indianapolis, Ind., for appellee.

Before BAKER and KOHLSAAT, Circuit Judges, and WRIGHT, District Judge.

BAKER, Circuit Judge (after stating the facts as above). [1] If a lien exists in this case, the fact, if such it be, that appellants might ultimately collect the money confessedly due them from appellee by judg-

ment and execution at law does not militate against this equitable proceeding. Nor does the unmerchantability of appellee's title bar the way. Mere incumbrances surely do not. One of the objections set forth in the bill is a ground of escheat to the state. But the question is undetermined, and appellee might defeat the claim, if asserted. Appellants, entitled to a merchantable title, are not compelled to accept one of doubtful validity, to be settled in a subsequent lawsuit. Further, the state has not declared nor sought to enforce such a claim; it may never be asserted; remedial legislation may be passed; and in the meantime appellee is enjoying the land as owner. He has a standing to claim the right of removing incumbrances and clearing away clouds, and therefore an equitable interest that may be subjected to decree and sale. Elterman v. Hyman, 192 N. Y. 113, 84 N. E. 937, 127 Am. St. Rep. 862, 15 Ann. Cas. 819. In short, the bill states a good case for equitable relief unless the commingling of real and personal property in the written contract of purchase for a consideration in gross precludes the lien.

[2] Appellants advance a contention that this case in fact involves only real estate. To this end the allegations were made that there were no unfilled orders as described in paragraph 4, and that all the articles mentioned in paragraph 3 were fixtures, used and intended to be used in the operation of a cement manufactory. Bags, tools, and the like, are articles that manifestly were not physically annexed to the soil. We think all of the articles in paragraph 3 are susceptible of "constructive annexation." But the determining element in constructive annexation of articles not physically annexed is the intention of the parties. Binkley v. Forkner, 117 Ind. 176, 19 N. E. 753, 3 L. R. A. 33; C. W. Raymond Co. v. Ball, 210 Fed. 217 (at this term). And here the written contract unmistakably discloses the intention of the parties that the articles in paragraph 3 shall stand as personal property. Not only are the articles separately described as objects of sale, but they are to be conveyed by bill of sale; they are not to pass under the deed of realty, as fixtures either physically or constructively annexed would pass. So the question is whether there can be a vendee's lien when real and personal property are included in one contract of sale for a gross sum.

"No" is the general answer of the numerous authorities cited by appellee,[1] if it be assumed that everything said respecting a vendor's lien applies equally and in the same terms to a vendee's lien. For nearly all the cases have reference to vendors' liens.

---

[1] 2 Jones on Liens, § 1072; 3 Pomeroy, Equity Jurisprudence, § 1251; 39 Cyc. 1830; 29 Am. & Eng. Encyl. of Law (2d Ed.) 745; Wabash, etc., R. R. Co. v. Ham, 114 U. S. 597, 5 Sup. Ct. 1081, 29 L. Ed. 235; Welch v. Farmers' Loan & Trust Co. (C. C. A. 6th Cir.) 165 Fed. 561, 91 C. C. A. 399; Koch v. Roth, 150 Ill. 212, 37 N. E. 317; Warner v. Bliven, 127 Mich. 665, 87 N. W. 49; Suddeth v. Knight (Ala.) 14 South. 475; Bridgeport, etc., Co. v. American Fire Proof, etc., Co., 94 Ala. 592, 10 South. 704; Sykes v. Betts, 87 Ala. 537, 6 South. 428; Betts v. Sykes, 82 Ala. 378, 2 South. 648; Alexander v. Hooks, 84 Ala. 605, 4 South. 417; Stringfellow v. Ivie, 73 Ala. 209; Peters v. Tunell, 43 Minn. 473, 45 N. W. 867, 19 Am. St. Rep. 252; Griffin v. Byrd, 74 Miss. 32, 19 South. 717; Snyder v. Snyder (Sup.) 115 N. Y. Supp. 993; Erickson v. Smith, 79 Iowa, 374, 44 N. W. 681; Sutton v. Sutton, 39 Tex. 549; Wilson

A contrary answer, appellants say, is supported by Clarke v. Curtis, 11 Leigh (Va.) 559, 37 Am. Dec. 625, Shelton v. Jones, 4 Wash. 693, 30 Pac. 1061, and Doty v. Deposit Bldg. Ass'n, 103 Ky. 710, 46 S. W. 219, 47 S. W. 433. In the Virginia case Clarke, the vendee, entered into possession of the real and personal property under an executory contract by which Curtis, the vendor, retained title to the whole until the purchase price should be fully paid. No equitable vendor's lien was involved, for the suit was for the specific performance of the contract, in which title was reserved to the complainant vendor. And in a later case (McCandlish v. Keen, 13 Grat. 615) the Virginia court recognizes the general rule contended for by appellee. Shelton v. Jones was a case, as the opening sentences of the opinion show, not of establishing an implied vendor's lien, but of foreclosing an express lien reserved in the executory contract. Washington had already decided in Smith v. Allen, 18 Wash. 1, 50 Pac. 783, 39 L. R. A. 82, 63 Am. St. Rep. 864, that the equitably implied vendor's lien had no existence in that state. In regard to the Doty Case we note that the Kentucky court in Growning v. Behn, 10 B. Mon. 383, had denied an equitable vendor's lien where real and personal property had been conveyed jointly for a gross consideration, and that afterwards a statute was enacted that a grantor should not have a lien for unpaid purchase money "against bona fide creditors and purchasers unless it is stated in the deed what part of the consideration remains unpaid." Appellee insists that the Doty Case was governed by this statute. And in the opinion the following appears:

"By clear implication of the statute, as between vendor and vendee, a lien exists upon the land sold for the purchase price of the land; and it does not seem to be seriously contended that if it appeared, either from the contract or extrinsic evidence, what price in the trade was put upon the realty and what upon the personalty, a lien would not exist upon the land for that proportion of the unpaid purchase money which was applicable to the sale of the land."

But the statute plainly does not cover a case of the joint sale of realty and personalty for a gross sum, and the court resorted to equitable considerations in reaching its conclusion:

"We think it proper to treat this transaction as one sale; and, assuming, for the purpose of argument, that no lien exists upon the personalty, even as between vendor and vendee, after possession has been parted with, we see nothing inequitable in subjecting that part of the property which the court can reach to a vendor's lien for the unpaid purchase money due upon all the property sold in the same transaction."

However, the preponderance of the authorities, certainly in number, support the general proposition that no vendor's lien exists where realty and personalty are sold jointly for a sum in gross. But do these cases mean that whenever such a contract is exhibited the vendor is inevitably remediless in equity, and must necessarily be remitted to his action at law? We think not. Whether the vendor's lien historically

v. Daniels, 9 Grant Ch. (U. C.) 491; Cole v. Smith, 24 W. Va. 290; Gard v. Gard, 108 Cal. 19, 40 Pac. 1059; Fostoria Coal Mining Co. v. Hazard, 44 Colo. 495, 99 Pac. 758; Growning v. Behn, 10 B. Mon. (Ky.) 383; McCandlish v. Keen, 13 Grat. (Va.) 615.

was an original creation or an adaptation of the civil law, the fiction was used by the chancellor to compel the defendant to do what he ought in fairness and good conscience to do in his relation with the complainant. If land alone was involved, the solution was easy. Complainant has fully performed his part of the bargain by giving a deed and possession. Defendant ought not in fairness and good conscience to have the land and the money too. Very well, hold him as trustee of the land until the money is paid. And if land and chattels are included in one contract for a sum in gross, the equity of the matter, the question of righteous dealing between man and man, is the same. If a different result is reached, it is not because the chancellor has changed his standards and now views with favor the unconscionable conduct of the defendant, but on account of the unwillingness to frame decrees that are uncertain of execution, or cannot be executed without doing the defendant an injustice. [3] As to chattels, the trouble with attempting to declare an equitable attachment (without manual seizure in advance) is that before the decree is entered the goods may be beyond the jurisdiction. Such a decree would be brutum fulmen, just as the chancellor will not undertake to force the prima donna to sing for the impresario who engaged her, though he may prevent her from singing for others. But if a single contract covers both land and chattels, and the consideration is stated as a single sum, why should not the conduct of the defendant meet its merited decree, if the chancellor is able definitely and certainly to apportion the sum between the land and the chattels? In essence the land transaction would then stand apart from the other. If in another part of the contract there was a recital that the parties valued the land at one-half the consideration named, a clear basis for apportionment would be furnished. And such a recital would not dispute the statement of the gross consideration, for that statement does not necessarily mean that the land and chattels were lumped without any estimate of their separate values. The supposititious recital, therefore, would explain, but not contradict, the stated consideration. And if the basis of apportionment, found in one part of the writing, is not in conflict with the contractual part of the writing, such basis, if found dehors the writing, would not be repugnant to the contract. In the Doty Case, supra, extrinsic evidence was deemed admissible for such a purpose. In Russell v. McCormick, 45 Ala. 587, 6 Am. Rep. 707, the syllabus states that:

"A vendor's lien upon land for its purchase money is not impaired because the obligation taken for its payment includes the price of personal property sold at the same time, when the amount to be paid for the land can be ascertained by proof"

—and the proof there consisted of a statement in the contract of the price per acre. Bergman v. Blackwell (Tex. Civ. App.) 23 S. W. 243, was a case where the vendor sold real and personal property for the gross sum of $3,000. The deed of the land was for an undivided interest, and recited that the purchase money was not fully paid. The vendee paid $1,500 of the $3,000, and gave for the remaining $1,500 his note in which a contract lien for $1,500 was created on the land in favor of the vendor. In partition proceedings the tract on which a

vendor's lien was sought was set off to the vendee at a valuation of $625. The suit was by the vendor's assignee of the $1,500 note against the vendee's grantee of the tract set off in partition, who had notice of the recital in the deed, but not of the contract lien, and resulted in the declaration of, a vendor's lien against that tract for $625. We now quote from the opinion:

"The note itself creates a lien on the land, to secure it, and as a contract lien it is good against Means and purchasers from him with notice of it. Whether the recital in the deed would affect appellants with notice of such a lien—that is, with notice of any lien except a vendor's lien for the purchase money—is a question which we need not decide. Notwithstanding the fact that both land and chattels were embraced in the sale to Means, such portion of the consideration, at least, as represents the value of the land sold, is secured by a vendor's lien on the land, and it was competent to ascertain, by any legitimate evidence, what that was. There being no agreement between the parties at the time of the sale, fixing the value of the land (unless the note is to be treated as such), equity will ascertain the part of the consideration which it formed by fixing the proportion which its value bore to the whole value of the property."

In McCauley v. Holtz, 62 Ind. 205, the suit was upon a note and to enforce a vendor's lien upon land, in part payment for which it was alleged the note was given. The facts are stated in the opinion as follows:

"The maker of the note purchased of the payee the real estate, a lien upon which is in question, and also a stock of liquors, two billiard tables, bar fixtures, furniture, etc., for the gross sum of $2,526, $1,900 of which was paid at the time the deed of conveyance was made, and the note of $600, now in suit, was given for the balance, less $26, which was paid after the note was executed. The real estate at the time of the sale was estimated at the value of $1,600, and the personal property at $926. At the time the payments were made, nothing was said by either party whether they should be applied to the payment of the real or personal property; and no such application was made by either party. The money was paid upon the whole debt."

On these facts the court applied the payments upon the personalty, and held that the unpaid $600 was a lien on the land, inasmuch as the parties at the time of the sale had recognized that the land had a much higher value than $600. How the estimate of value was proved, whether by recital in the contract or by extrinsic evidence, neither the reported case nor the record discloses. But that is immaterial. The case is valuable as showing how a court of equity will hold a conscienceless vendee if possible, first, by applying his payments upon the personalty, and, secondly, by fixing a lien on the land for the unpaid part of the gross consideration if that balance does not exceed the value of the land as recognized by the vendee at the time of purchase. The New York Court of Appeals, in Zeiser v. Cohn, 207 N. Y. 407, 101 N. E. 184, met the contention that there can be no vendor's lien if lands and chattels are jointly sold for a gross sum by saying that that is a generalization which must be answered by considering the particular facts of the case. To conclude this part of the discussion, we have found no authority that the mere fact of joinder of land and chattels in one contract for a gross sum inevitably bars the door of equity against the vendor, and that permits the vendee to hold both land and money against the power of the chancellor if the vendor is able to show, by

intrinsic or extrinsic evidence, that to grant the lien will not put upon the land any part of the purchase price of the chattels. Cases denying a vendor's lien, like Wabash Ry. Co. v. Ham, 114 U. S. 587, 5 Sup. Ct. 1081, 29 L. Ed. 235, Welch v. Farmers' L. & T. Co., 165 Fed. 561, 91 C. C. A. 399, and others cited by appellee, are where the court was unable to find that an allowance of the lien would put no charge upon the land beyond a valuation recognized by the vendee at the time of the purchase.

Thus far the question has been considered from the viewpoint of a vendor. This case, however, is one of an asserted vendee's lien. In many respects the two equitable fictions are identical. They both grow out of the transaction of the sale and purchase of land. They both originated (though not at the same period, Mackreth v. Symmons, 15 Ves. Jr. 329) from the same motive, from the desire of the chancellor to compel righteous dealing between vendor and vendee. But when the two cases reach the court, we believe certain distinctions, which should be given effect, may justifiably be drawn. When the vendor sues, the transfer of title has been made, and he is seeking a lien for the unpaid balance of the gross consideration. Therefore the whole of the consideration necessarily has to be viewed and weighed. It may be that, unless means are afforded for apportioning the whole consideration between land and chattels with accuracy down to the last dollar, the chancellor would be constrained to withhold a charge upon the land on account of the uncertainty. But when the vendee sues in equity for the return of the earnest money, no transfer of the property has taken place, and he is not seeking a lien for the balance of the gross sum. Therefore the whole of the consideration does not necessarily have to be viewed and weighed. That is, from the standpoint of the vendee, the court, applying the doctrine of application of payments, would apply the earnest money upon the land (the converse of what was done in McCauley v. Holtz, 62 Ind. 205); and then, if it clearly appeared that the earnest money was but a very small part of the value of the land according to any valuation that the vendor could have honestly asserted at the time of the sale, the court would not need to apportion the total consideration between land and chattels with accuracy down to the last dollar, the court, without regarding the value of the chattels or determining to a nicety the excess of value in the land, could decide with certainty that no charge was being put upon the land beyond the money the vendee had invested in the land, and therefore equitably owned to that extent.

[4] In their bill appellants averred that they paid the $25,000 upon the land. This allegation, as we have already stated, is not contradictory, but only explanatory, of the consideration as set forth in the exhibited contract. (Consideration may always be explained.) This allegation, therefore, made the bill good. If the vendee's lien rule is no more flexible than the vendor's, the allegation would be supported by proof of an estimate of the land value in excess of $25,000, made by the parties at the time of the sale or in connection therewith. Under the vendee's lien rule, as we have given it, the allegation would be supported, even if the parties made no application of the $25,000, and no

definite apportionment of value between land and chattels, by proof that the chattels in paragraph 3 were relatively of small value, and that of the total valuation of $450,000 the land value, on any possible basis, clearly exceeded the $25,000 earnest money many times over.

This is an Indiana case; and of course the federal court in Indiana cannot properly declare a vendor's or a vendee's lien unless the Supreme Court of the state recognizes the existence of such liens. Fisher v. Shropshire, 147 U. S. 133, 13 Sup. Ct. 201, 37 L. Ed. 109; Slide & Spur Gold Mines v. Seymour, 155 U. S. 509, 14 Sup. Ct. 842, 38 L. Ed. 802. Both liens have frequently been upheld in that jurisdiction. Shirley v. Shirley, 7 Blackf. (Ind.) 452; Dart v. McQuilty, 6 Ind. 391; McCauley v. Holtz, 62 Ind. 205; Stults v. Brown, 112 Ind. 370, 14 N. E. 230, 2 Am. St. Rep. 190; Coleman v. Floyd, 131 Ind. 331, 31 N. E. 75. Indeed, we have found in our investigation of this subject no court more zealous to uphold a high standard of righteous conduct between vendor and vendee of land through the compulsive power of equity than the Indiana court.

[5] Appellants claim a lien to cover their expenses for testing the deposits and examining the title as well as their earnest money. Against this, appellee cites Klim v. Sachs, 102 App. Div. 44, 92 N. Y. Supp. 107; Occidental Realty Co. v. Palmer, 117 App. Div. 505, 102 N. Y. Supp. 648; Ungrich v. Shaff, 119 App. Div. 843, 105 N. Y. Supp. 1013. The contrary has also been declared by the Supreme Court in Special Term. Reid v. Johnson (Sup.) 121 N. Y. Supp. 750. But however the case may be where the vendor has not undertaken in the land contract to repay such expenses and the recovery must be for damages, we believe that where, as in the present case, the vendor has promised in the contract to pay such expenses along with the earnest money, a lien should be held to exist for the expenses if it does for the down payment.

The decree is reversed and the cause remanded for further proceedings.